J-A16018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTIAN JOEL GONZALEZ | : | |
| SANTIAGO | : | |
| | : | |
| | : | No. 1788 EDA 2024 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered May 29, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0003822-2022

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED SEPTEMBER 12, 2025**

Christian Gonzalez Santiago appeals from the judgment of sentence imposed after he pled *nolo contendere* to involuntary manslaughter.[1] Gonzalez Santiago challenges the discretionary aspects of his sentence, claiming that the trial court imposed an excessive sentence, outside the aggravated range of the sentencing guidelines.  Upon review, we affirm in part and modify in part.

Briefly, the facts follow:

On July 31, 2022, [Gonzalez Santiago] and Jose Estrada-Estrada were ["racing"] on motorcycles southbound on MacArthur Road in Whitehall, Lehigh County, Pennsylvania [approximately 80 mph in a 40 mph zone].  At the same time, two minors, AV and MD, were traveling northbound in a sport-utility-vehicle (SUV) on MacArthur Road at the intersection of MacArthur Road and Mechanicsville Road.  AV was the driver and MD was in the front passenger seat

_____

[1] 18 Pa.C.S.A. § 2504(a).

of the SUV. As [Gonzalez Santiago] and Jose Estrada-Estrada approached at a high rate of speed, AV began to turn left onto Mechanicsville Road, Jose Estrada-Estrada's motorcycle struck AV's SUV, causing it to tip over. As a result of the impact, Jose Estrada-Estrada and MD died.

Trial Court Opinion, 8/30/24, at 2. Gonzalez Santiago was arrested and charged with multiple offenses including two counts of homicide by vehicle and one count each of accidents involving death or personal injury, accidents involving death or personal injury while not licensed, recklessly endangering another person, reckless driving, driving at safe speed, use of improper class of license, not wearing proper headgear on a motorcycle, careless driving—unintentional death, and illegal racing.

The Commonwealth amended the count of homicide by vehicle pertaining to MD to one count of involuntary manslaughter, to which Gonzalez Santiago pled *nolo contendere* on March 11, 2024. The Commonwealth withdrew all other charges.

On April 12, 2024, the trial court sentenced Gonzalez Santiago

to a period of imprisonment not less than thirty (30) nor more than sixty (60) months [the maximum sentence] in a State Correctional Institution. [Gonzalez Santiago] filed a post-sentence motion to modify and/or reconsider sentence on April 22, 2024 seeking *inter alia* (1) a reduced sentence; (2) a declaration that [he was] eligible for the state motivational bootcamp program; and (3) [removal of] the condition that [he] is not permitted to drive any motor vehicle while on parole. A hearing on the motion was held on May 24, 2024; the [trial court] subsequently entered an order on May 24, 2024 [filed May 29, 2024] re-imposing the original term of incarceration, finding [Gonzalez Santiago] to be an inappropriate candidate for the state motivational bootcamp program, and prohibiting [him] from operating any motorcycles [rather than any motor vehicle as

- 2 -

previously ordered], for the entire period of his parole. [Gonzalez Santiago] filed a subsequent post-sentence motion to modify and/or reconsider sentence on June 2, 2024; said motion was denied on June 4, 2024.

*Id.* at 3 (excessive capitalization omitted).

Gonzalez Santiago filed this timely appeal. He and the trial court complied with Appellate Rule 1925.

Gonzalez Santiago raises the following two issues for our review:

1. Did the trial court err and abuse its discretion when it imposed an above aggravated range sentence that was unreasonable because it focused primarily on the seriousness of the offense, considered impermissible factors, and failed to adequately provide the reasons for a sentence outside the guidelines on the record?

2. Did the trial court err and abuse its discretion when it imposed an above aggravated range sentence that was unreasonable and excessive because it failed to adequately consider mitigating factors?

Gonzalez Santiago's Brief at 7.

Gonzalez Santiago challenges the discretionary aspects of his sentence. Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Instead, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

(1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]pellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code . . . . [I]f the appeal satisfies each of

- 3 -

these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Colon***, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013)). Gonzalez Santiago complied with the first three criteria under ***Colon***. Accordingly, we must determine whether he raises a substantial question.

In his Appellate Rule 2119(f) statement, Gonzalez Santiago claims that the trial court abused its discretion when it imposed an excessive sentence above the aggravated range of the sentencing guidelines without stating "adequate" reasons for doing so; focused primarily on the seriousness of the offense; relied on impermissible factors; and failed to adequately consider mitigating factors. Gonzalez Santiago's Brief at 23-25.

We have held that "a claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guidelines presents a 'substantial question' for our review." ***Commonwealth v. Eby***, 784 A.2d 204, 206 (Pa. Super. 1999). Additionally, an allegation that the trial court imposed the sentence outside the guidelines without providing an adequate explanation on the record raises a substantial question. ***See Commonwealth v. Antidormi***, 84 A.3d 736, 759 (Pa. Super. 2014). Where the trial court imposed a sentence based solely on the seriousness of the offense and failed to consider all relevant factors, we have found that a substantial question existed. ***Commonwealth v. Ventura***, 975 A.2d 1128, 1133 (Pa. Super. 2009). Likewise, a substantial question is raised when an appellant alleges

that his sentence is excessive because the trial court relied on impermissible factors. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa. Super. 2011). Finally, "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*). Therefore, we will address the merits of Gonzalez Santiago's sentencing claims.

> Our standard of review of a sentencing claim is as follows:
>
> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006). Where there is an abuse of discretion, the sentence must be vacated. *See Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007).

Gonzalez Santiago claims that the trial court abused its discretion when it imposed an unreasonable sentence outside the aggravated range of the sentencing guidelines.[2] Specifically, he argues that the trial court focused on the seriousness of the offense, particularly his high rate of speed, lack of a motorcycle license, and the death of MD. According to Gonzalez Santiago,

_____

[2] We consider his issues and arguments together for ease of analysis.

these factors were already contemplated by the offense and the offense gravity score ("OGS") and, without more, the court's reliance on these factors failed to demonstrate how his incident differed from the typical case of involuntary manslaughter. Gonzalez Santiago's Brief at 35.

Gonzalez Santiago further argues that the trial court relied on impermissible factors when it sentenced him. He maintains that the trial court considered news articles about fatal accidents at the location of this incident and offenses to which he did not plea, including his failure to render aid and racing. *Id.* at 37-38.

Lastly, Gonzalez Santiago argues that the trial court failed to "adequately" consider relevant mitigating factors presented at the sentencing hearing. *Id.* at 40. Gonzalez Santiago maintains that the court did not consider his lack of a prior record, acceptance of responsibility, numerous character letters and witnesses, his family life, and his good employment record. *Id.* at 41-42.

For these reasons, Gonzalez Santiago maintains that his sentence should be vacated. *Id.* at 43. We disagree.

The Sentencing Code requires that when sentencing a defendant, the trial court must first consider the sentencing guidelines. 42 Pa.C.S.A. §9721(b). The court also must consider "the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. §9721(b). Finally, before imposing a sentence of total confinement, the court

must consider "the nature and circumstances of the crime[,] and the history, character, and condition of the defendant." 42 Pa.C.S.A. § 9725. The appellate court gives great deference to the trial court's sentencing decision. *See Walls*, 926 A.2d at 961.

Notably, when considering the sentencing guidelines, the trial court is permitted to deviate from them. "[T]he [s]entencing [g]uidelines are purely advisory in nature." *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007). However, the court must follow certain rules to do so.

> The statute requires a trial judge who intends to sentence a defendant outside of the guidelines to demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1264 (Pa. Super. 2012) (citation and brackets omitted).

However, where a sentence outside the guidelines is unreasonable, this Court must vacate it. 42 Pa.C.S.A. § 9781(c)(3). To determine if the sentence is unreasonable, an appellate court must consider the following four factors:

> **(d) Review of record.**—In reviewing the record the appellate court shall have regard for:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).  "Thus, under the Sentencing Code, an appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is 'unreasonable.'"  **Walls**, 926 A.2d at 963.  "[W]hat makes a sentence 'unreasonable' is not defined in the statute.  Generally speaking, 'unreasonable' commonly connotes *a decision that is 'irrational' or 'not guided by sound judgment*.'"  **Id.** (emphasis added).  When the proper standard of review is utilized, "rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guidelines ranges . . . . " **Id.** at 964.

Initially, our review of the sentencing transcript reveals that, in fashioning  Gonzalez Santiago's sentence, the trial court was aware of and considered the sentencing guidelines.  N.T., 5/24/24, at 12.  Gonzalez Santiago's prior record score was zero and the offense gravity score for involuntary manslaughter was 6.  Thus, the standard range sentence under the guidelines was 3 to 12 months' incarceration; mitigated RS/probation to 3 months' incarceration; and aggravated 12 to 18 months' incarceration.  **Id.** at 12.  The trial court sentenced Gonzalez Santiago to a minimum sentence of 30 months' incarceration, 12 months above the top end of the aggravated

range, the maximum sentence. Because the trial court sentenced Gonzalez Santiago outside the sentencing guidelines, we may reverse his sentence, but only if we find that it is unreasonable.

Additionally, we observe that, in sentencing Gonzalez Santiago, the trial court had a presentence investigation ("PSI") report, which it reviewed and noted on the record. *Id.* at 20. Where a sentencing court is informed by a PSI, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009).

Nonetheless, before sentencing Gonzalez Santiago (at the second hearing), the trial court explained on the record the factors it considered and reasons for its sentence. The court stated:

> In large part, [Gonzalez Santiago], Attorney Heidorn has pointed out very valid issues about your background and character. You maintain employment. You have a family. There were not any prior criminal convictions with the exception of the driving under - - well, it is not even a criminal conviction. It is a motor vehicle violation of driving under suspension in 2018.

> Like many defendants there are two sides to you. There is the side which Attorney Heidorn has focused upon, which are the attributes. . . which you will continue to have the ability to enjoy from having a family and life ahead of you.

N.T., 5/24/24, at 20.

However, the court further explained:

> On the other hand, I can't just ignore the facts of this particular incident.

- 9 -

> While it is true that you were not driving the motorcycle that plowed into or collided with the vehicle in which the young lady was killed, I found that you were certainly a contributing factor in that incident that led to this death. That the emotional wreckage that was imposed upon the victim's family is something that is not easily overcome in any type of criminal sentence. There is no way to replace their daughter or bring her back. But hopefully, this proceeding brings some closure for them and allows [them] to move forward.
>
> As the PSI indicates, you and your colleague Mr. Estrada-Estrada were driving approximately 80 miles an hour in a 40 mile per hour down there on McArthur Blvd. That has now been highlighted, I guess, to a certain extent that you were driving without a motorcycle license on this date. You had a series of motor vehicle violations including four citations for driving while your license was suspended or revoked, one citation for reckless driving, four citations for driving without a license where the operator must be licensed. So your driving privilege has been suspended eight times between 2013 until privileges were restored on December 22, 2021.
>
> So there are **a number of egregious factors** regarding your behavior on this date. Driving without the appropriate license, driving at high speed, not exercising care that had to be utilized by any individual operating a motor vehicle, including a motorcycle on this particular date.

*Id.* at 21-22 (emphasis added).

Clearly, contrary to Gonzalez Santiago's claim, the trial court did not consider only the nature and seriousness of the offense. Rather, the court also considered Gonzalez Santiago's character and history, as argued by defense counsel and relayed to the court by family and friends, which was mitigating. *See* N.T., 4/12/24, at 49-50, 54-55; N.T., 5/24/24, at 20-21.

The trial court also considered factors relating to the seriousness of the offense—Gonzalez Santiago's high rate of speed; his lack of a motorcycle license at the time of the accident, and the untimely death of MD. To the

extent that the court gave these factors greater weight than the mitigating ones, as Gonzalez Santiago claims, we cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court. **See Commonwealth v. Macias**, 968 A.2d 773, 778 (Pa. Super. 2009).

We acknowledge that the seriousness of the offense is contemplated by the elements of involuntary manslaughter, which include committing an unlawful act in a reckless or grossly negligent manner (speeding) and death, as well as the OGS for this offense. However, the detailed circumstances surrounding this incident are not contemplated by this offense and therefore may be considered when the court imposes sentence. **See Commonwealth v. Sperl**, 2019 WL 6330578, at \*5 (Pa. Super. Ct. Nov. 26, 2019) (citing **Commonwealth v. Dotter**, 589 A.2d 726, 731-32 (Pa. Super. 1991) (explaining that facts regarding the nature and circumstances of the offense that are not elements of the crime are properly considered when determining whether to depart from the guidelines)). Contrary to Gonzalez Santiago's claim, these particular circumstances served as the basis for the trial court's sentence, set this incident apart from other instances of involuntary manslaughter, and justified a sentence outside the guidelines.

The trial court found Gonzalez Santiago's speed, which, at 80 mph was double the legal limit, to be particularly egregious. N.T., 5/24/24, at 22. Moreover, he was not just speeding. Instead, he and Estrada-Estrada sped down a busy road, side by side, and through an intersection, where they were likely to encounter other vehicles without thought of their conduct.

The court also found Gonzalez Santiago's failure to have a motorcycle license at the time of this incident to be egregious. *Id.* As the court noted, Gonzalez Santiago was cited repeatedly for driving without a license. Despite this, he again chose to operate a motorcycle without a license the day of this incident. Not only was this reckless, but Gonzalez Santiago's driving without a license again demonstrated his refusal to follow the rules of the road which are intended to protect the public. Had Gonzalez Santiago not been operating a motorcycle that day, which he was prohibited from doing, this accident would not have happened.

The court further found MD's death to be a significant factor. The court noted that she was young. *Id.* at 21. MD was 16 years old and had her entire life ahead of her. While death resulting from an accident is always tragic, it is especially tragic when it involves a young person. Moreover, the court heard from multiple witnesses who told the court about MD and the effect that her death had on them and the community. The court noted that MD's death had wreaked such "emotional wreckage" on many people. *Id.* Therefore, it is not simply that there was a death that the court considered but the particular facts of who died, what caused the death, and the resulting impact on others.

Lastly, our review of the record reveals that the trial court did not rely on impermissible factors when it sentenced Gonzalez Santiago, namely news articles about other accidents at the location of this incident and charges to which he did not plea. Contrary to his claim, the court did not **rely** on news articles to determine Gonzalez Santiago's sentence. Rather, it merely

referenced these articles **in passing** during the first sentencing hearing. **See** N.T., 4/12/24, at 55. Notably, it did not mention any such articles during the second hearing. Moreover, as the Commonwealth notes, the court's reference to the articles reflected its concern for the protection of the public instead of a factor in its sentence.

The trial court also did not rely on the fact that Gonzalez Santiago had been charged with other crimes to which he did not plea, *i.e.*, racing and failure to render aid. Rather, the trial court considered the circumstances surrounding this incident as discussed above. Gonzalez Santiago and Estrada-Estrada were speeding down the road, side by side; in fact, Gonzalez Santiago admitted to police that he was racing with Estrada-Estrada. Although Gonzalez Santiago's conduct may not have risen to the legal definition of racing, it clearly describes his conduct that day in everyday terms. And, although the trial court initially considered Gonazlez Santiago's failure to render aid at the accident, the court immediately withdrew reference to this when defense counsel objected. N.T., 5/24/24, at 26. Notwithstanding this, we note that it is not uncommon for a court to consider a defendant's leaving the scene instead of seeking help or staying to assist a victim as an aggravating factor.

Based upon the foregoing, we cannot conclude that Gonzalez Santiago's sentence was unreasonable. The trial court imposed a sentence which considered the required sentencing factors. The court rationally and deliberately exercised its discretion to deviate from the sentencing guidelines

after considering all the relevant sentencing factors and circumstances of this case. Therefore, Gonzalez Santiago's sentencing claims merit no relief.

However, this does not end our review. We further observe that the trial court imposed a condition of Gonzalez Santiago's parole. This concerns the legality of his sentence. Although Gonzalez Santiago did not challenge this on appeal, we note that questions regarding the legality of a sentence "are not waivable and may be raised *sua sponte* on direct review by this Court." **Commonwealth v. Wright**, 276 A.3d 821, 827 (Pa. Super. 2022) (citation omitted and formatting altered). Review of the legality of a sentence "presents a pure question of law. As such, our scope of review is plenary and our standard of review de novo." **Id.** (citations omitted and formatting altered). Further, "[i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." **Commonwealth v. Warunek**, 279 A.3d 52, 54 (Pa. Super. 2022) (citation omitted and some formatting altered).

When a trial court imposes a maximum sentence of imprisonment of two or more years, the Pennsylvania Board of Probation and Parole ("PBPP") has exclusive authority over the terms of the defendant's parole. **See** 61 Pa.C.S.A. § 6132; **see also Commonwealth v. Coulverson**, 34 A.3d 135, 141 (Pa. Super. 2011). Thus, any condition that a sentencing court imposes on a defendant's state parole is purely advisory. **Commonwealth v. Mears**, 972 A.2d 1210, 1211 (Pa. Super. 2009).

Here, Gonzalez Santiago's sentence prohibited him from operating a motorcycle while on parole; notably, his operation of a vehicle was of some contention. N.T., 5/24/24, at 24. However, because Gonzalez Santiago's sentence was more than two years, the trial court lacked the authority to impose this condition as part of Gonzalez Santiago's sentence. The authority to set such conditions lies solely with the PBPP. Although the trial court was permitted to recommend that this condition be implemented, it could not impose it as a matter of law. Accordingly, we modify Gonzalez Santiago's sentence solely as it mandates this condition, and we note that the trial court recommends this condition to the PBPP during his state parole. We affirm the judgment of sentence in all other respects.

Judgment of sentence affirmed in part and modified in part. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/12/2025